The opinion of the court was delivered by
Monroe, J.
The purpose of this suit is to determine whether certain portions of the plaintiff’s railroad, situated in the parishes of Red River and Natchitoches, are exempt from taxation, under the following provisions of Article 230 of the State Constitution, to-wit:—
“ There shall also be exempt from taxation for a period of ten year» from the date of its completion any railroad or part of such railroad "that may hereafter be constructed and completed prior to January 1st, 1904; provided, that when aid has heretofore been voted by any parish, ward, or municipality toi any railroad not yet constructed, such railroad ■shall not be entitled lo the exemption from taxation herein established, unless it waives and relinquishes such aid or consents to a re-submis■sion of the question of granting such aid to a vote of the property taxpayers of the parish, ward, or municipality, which has voted the same, if ■one-third of the property tax-payers petition for the same within six months after the adoption of this Constitution.”
It is admitted that, with respect to portions of its road, the plaintiff lias been granted aid by the parish of Red River, the town of Coushatta, •and wards “ three ” and “ four ” of the parish of Natchitoches, and the plaintiff, claiming that the portions so aided have been constructed and ■completed since the adoption of the Constitution, alleges that no peti *1933 tion of property tax-payers, for the re-submission of the question of granting such aid, was signed or presented to the proper authorities, within six months after the adoption of the Constitution, and concludes, therefrom, that it is now entitled to both the aid and the; exemption. It is also set up iu the petition that no aid was granted with respect to nine miles of the road, lying between Coushatta and the Natchitoches-, parish line. Inasmuch, however, as this contention has not been urged here, either by brief or orally, we take it for granted that it is abandoned. Upon the part of the defense, the issue of fact is made, with regard to some parts of the road for which the exemption is claimed, that, they were completed before the adoption of the Constitution; but, as a decision of the main question is forced, and, if decided adversely to the-plaintiff, will render the determination of this issue unnecessary, wo need not concern ourselves with it at this time.
With regard to so much of the road as falls within the meaning of the provisions of the Constitution which are invoked, i. e. — so much as-, having- been voted aid, has been -constructed and completed since the adoption of the Constitution, it is not pretended that the plaintiff has, at any time, either relinquished the aid so ¡voted, or consented to the resubmission of the question of granting such aid, and it may be assumed for the purposes of the present inquiry, that no petition of property taxpayers, upon that question, has ever been formulated.
Upon this basis, the position of the plaintiff is -clearly and tersely stated by the learned judge of the District Court, in his able and carefully reasoned opinion, as follows:—
“ Plaintiff’s contention was1 that it was not called Upon or required tog-ive such consent until one-third of the property tax-payers petitioned for a re-submission of the question, and, as no such petitions were filed, within the six months, the right to the exemption became perfect without any action on the part of the company; on the theory that the non-action of the tax-payors was equivalent to a consent on their part to. waive the re-submission of the question.”
“ This contention ” (says the judge) “ would make the article read that the railroad should be entitled to the exemption, unless the property tax-payers’ petition for a re-submission within six months, after May 12, 1896.”
Taking the Constitutional provisions, upon which the plaintiff relies, *1934 as a whole, we think that they express and imply the intention of the convention that no company to which aid had been granted by any parish, ward, or municipality, should be entitled to exemption from taxation, unless ili waived the aid so granted; with the saving clause or condition (as to the waiver), that, if the question of granting the aid should be re-submitted to those by whom it was granted, ánd favorably acted on, the company should not be obliged to waive such aid, but might enjoy it, as well as the exemption; provided, however, that the initial steps with regard to such re-submission should be taken within six months aftér the adoption of the Constitution.
Taking these provisions in the order in which they appear, the proposition of the State to the railroad eonrpanies was, to exempt from taxation, until 1904, those roads which should be thereafter constructed and completed, upon the condition that they would relinquish the aid which had been granted them by the parishes, wards, and municipalities.
This condition was neither unreasonable, nor illiberal, since the parishes, wards, and municipalities, in voting such aid, had in view the prospective taxation of the roads to be constructed, as a source from which the subsidies granted would be reimbursed; and it is a legitimate presumption that the railroad companies offered this prospective return as a consideration for the granting of the subsidies. Hence, whilst the Constitutional Convention was willing to assist in the'building of new roads, it was no more than fair that the companies should be required to keep faith with the wards and parishes from which they had already received, and were still receiving, assistance; and they would not have been keeping faith, if they had been allowed to withhold the consideration therefor, and, at the same time; exact a continuance of such assistance. But it may have been argued that those who granted the subsidies might be willing to continue their payment, notwithstanding the exemption of the companies from the obligation to pay their taxes; and the Convention, proceeding upon the theory that such a thing was possible, seems to have met the suggestion by qualifying the obligation, otherwise absolutely imposed upon tire companies (to relinquish the subsidies as a condition to exemption)', by the addition of an alternative-condition, whereby the tax-payers of the wards and parishes should be enabled to express that willingness, if they should think proper to do so, upon the same conditions as those upon which the grants had been made *1935 in the first instance. The idea, we may assume, being, that, if the companies were to be authorized to withhold the consideration, or an important part of the consideration, for the grants, the grantors ought to be left to determine whether they would continue the grants without such consideration. The situation was, however, somewhat different from that which existed when the aid was granted. Then, the tax-payers were at liberty to determine, without the consent or co-operation of the companies, whether they would vote a five mill subsidy for ten years, or a greater or less amount, or nothing. But, the aid having been voted and accepted, a contract was created by which they were bound, and it would have been perfectly idle for one-third of them, or all of them, to have petitioned for the re-submission of the question without the consent of the other contracting party, as it would háve been equally idle for the Convention to have authorized any such re-submission. It was, therefore, provided that the companies might consent, upon the one hand, to the subjection of their already secured subsidy to the test of another vote; and that the tax-payers might consent, upon the other hand, to vote upon the question of continuing to pay the subsidy in the event of the non-payment of taxes by the companies. And, merely to put a period to any uncertainty in the matter, a limit, of six months was fixed,-within which action should be taken. But there is nothing to indicate that any compulsion was intended. If it had been the purpose of the Convention, flatly, to add exemption from taxation to the aid which the railroads were receiving from the other sources, that purpose could have been accomplished, simply, -by the omission of the provisions upon the subject of such aid. Or, if it had been thought advisable, to express such purpose affirmatively, the language used, which conveys the idea that the continuance of the subsidy, in ease of the acceptance of the exemption, was to be left to the voluntarily action of the contracting parties, would not have been chosen- As we understand it, the taxpayers were at liberty to again vote the subsidies, which the plaintiff was required to renounce, if it accepted the exemption, but they were under no obligation to do so, and the presenting of a petition, by one-third of them, asking for the re-submission of- the question, would merely have indicated that those who signed were willing to vote in that way. And so, the plaintiff was at liberty to accept, and consent to, a proposition to re-submit the question, but it was under no more compulsion in the matter than were the tax-payers.
*1936 If, however, there was not an agreement upon the subject, and if the tax-payers, upon the one hand, did not petition, and the plaintiff, on the other, did not assent, within the six months; and if, in the event that there was both petition and consent, the aid was not again voted, the plaintiff, necessarily, fell back upon the other, and original, alternative” provided in the Constitution, of relinquishing, either the exemption, or the aid.
Rearing in mind that the release from the obligation to relinquish the aid (in order to secure the exemption) was to come to the plaintiff, eventually, not from the mere re-submission of the question, but from a favorable vote thereon, it will be seen that the real meaning of the saving clause attached to the said obligation is, that, if the tax-payers, being afforded another opportunity, again vote such aid, the obligation to-relinquish the same shall be of no-effect; and, bearing in mind, also, that another opportunity to vote on the question of the aid already granted, and in which the plaintiff had a vested right, could only be afforded by means of the consent of the plaintiff, upon the petition to that effect of one-third of the tax-payors, let us consider the language used by the lawmakers, to-wit-
“ * * ‘ such railroad shall not be entitled to the exemption * * unless it waives and relinquished such aid or consents to- a re-submission of the question of granting such aid to a vote of the property tax-payers * *, if one-third of such property tax-payers petition for the. same within six months after the adoption of this Constitution.”
This requires the concurrence of two things, in order to avail the. plaintiff, viz: The consent of the plaintiff, asid the consent of the taxpayers, evidenced by their petition; or, the consent of the plaintiff, based on that of the taxpayers; or, after the obtention of the consent of the taxpayers; or, if the tax-payers also consent, and evince their consent by a petition.
The thing- to be accomplished by the re-submission was the relief of' the railroad from its obligation to relinquish the aid which..had been granted to it by the tax-payers. No possible benefit could inure to the-latter from such re-submission, and no injury could result to them from the failure to re-submit; and the proposition, that the failure of the taxpayers to consent to the re-submission produces the same effect as though they had consented and had again voted the aid, is untenable.
*1937 Putting- the matter, briefly, in another shape; the re-submission, being a suggestion in the interest, of the plaintiff, whereby it might be relieved of an obligation, otherwise absolute, to give up the aid if it claimed the exemption, and might be afforded a chance of enjoying both, by means of a favorable vote by the tax-payers; the converse proposition is equally true, that without such re-submission and favorable vote, no such chance is afforded and the plaintiff remains hound to give up the aid as a condition precedent to its enjoyment of the exemption. But, if the burden of carrying out this suggestion rests upon the tax-payers, wijh respect to the initial step (the petition for the re-submission), what reason could there he for denying that they are equally bound with respect to the final step (the vote oh the question, when re-submitted). And, if they are thus hound to give the aid, exemption or no exemption, why not have left the matter of the aid as it was, since they were already bound for it befoi-e the Constitution was adopted ?
We have assumed that the tax-payers failed to petition for the resubmission, and it is conceded that the ¡plaintiff has neither consented to it nor yet relinquished the aid; hence, as we think, and for the reasons which have been given, neither of the two things have been done, the doing of the one or the other of which was necessary to entitle the plaintiff to the exemption. This was the conclusion reached, by a slightly different process of reasoning, by the judge of the District Court, and his judgment is affirmed.
Rehearing refused.
Breaux, J., dissents.
Watkins, J., dissents.